# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| DOLORES RIZZO,<br><br>                    Plaintiff,<br><br>v.<br><br>FIRST ADVANTAGE BACKGROUND<br>SERVICES CORP.,<br><br>                    Defendant. | Case No.: 3:22-cv-663 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Dolores Rizzo ("Plaintiff"), by and through the undersigned counsel, hereby submits her Complaint and Demand for Jury Trial ("Complaint") against Defendant First Advantage Background Services Corp. ("Defendant" or "First Advantage"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

## JURISDICTION AND VENUE

1. Jurisdiction of this court arises under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal law: 15 U.S.C. § 1681.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

3. Defendant transacts business in this District; Defendant purposefully avails itself of the protections of this District; and Defendant regularly directs business at this District, such that personal jurisdiction is established.

## PARTIES

4.  Plaintiff, Dolores Rizzo, is a natural person who resides in Moosup, Connecticut, within the confines of Windham County, Connecticut. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5.  Defendant, First Advantage, is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f). First Advantage is incorporated in Florida, and its principal place of business is located at 1 Concourse Parkway NE, Suite 200, Atlanta, Georgia, 30328. First Advantage can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

6.  At all times relevant to this Complaint, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

7.  Plaintiff incorporates the above paragraphs of this Complaint as though they are fully detailed herein.

8.  In early 2022, Plaintiff was out of work and primarily living off income from disability and Social Security. With her finances ever tightening, she expended substantial effort in searching for gainful employment.

9.  In or around March 2022, Plaintiff was overjoyed to receive an offer for full-time employment working as a Packer for non-party Frito-Lay.

10. This represented a significant opportunity for Plaintiff to better her life, as she had been out of work for approximately six (6) months. Accordingly, she gladly accepted the job offer.

11. As part of her employment onboarding, Plaintiff was required to consent to a background check prepared by First Advantage, which she did.

12. On or about March 30, 2022, Plaintiff received a letter from First Advantage, notifying her it was reporting public record information about her. The letter further indicated the organization which requested her report, Frito-Lay, might be sending her an additional letter to indicate its acceptance or rejection of her as an employee based on First Advantage's report.

13. Plaintiff, in a panic, rifled through the included documentation to determine what information First Advantage was reporting about her.

14. Plaintiff's heart sank when she saw two criminal records being inaccurately associated with her, both in Kent County, Rhode Island (case no. K2-2016-0410A).

15. Specifically, First Advantage was reporting a felony charge for "ASSAULT/DOMESTIC," and a misdemeanor charge for "DISORDERLY CONDUCT, DOMESTIC."

16. Both records included a disposition which read "FOUND GUILTY."

17. Plaintiff was horrified and confused. She had never been charged with either of these crimes, and certainly was never found guilty of either.

18. Regardless, the records being inaccurately reported by First Advantage and purportedly associated with Plaintiff included a field labeled "Name on File," which read "RIZZO, DELORES G."

19. After the initial shock wore off, Plaintiff recalled that approximately five (5) years prior, her brother had been charged with similar crimes.

20. As it turns out, the crimes being inaccurately reported by First Advantage were in fact the very same charges which had been filed against Plaintiff's brother. First Advantage had inaccurately attributed criminal records involving Plaintiff's brother to Plaintiff.

21. However, Plaintiff's confusion remained. More specifically, she was confused how First Advantage had mistaken her for her brother. While Plaintiff and her brother share the same surname, their first names – Delores and Francesco – were not similar at all.

22. Furthermore, Plaintiff and her brother have entirely different dates of birth. Francesco was born on May 8, 1951. Plaintiff was born on July 17, 1954.

23. In short, there was no basis for confusing the identities of Plaintiff and her brother.

24. After reflecting, Plaintiff recalled she had been very briefly involved in her brother's trial. Specifically, she had paid her brother's bail bond.

25. Indeed, a review of the court records in question show Plaintiff's name is referenced on the Case Summary page for case no. K2-2016-0410A under a field labeled "Bond Payor."

26. Upon information and belief, there is a difference between paying a defendant's bail bond and being charged with a defendant's crimes.

27. Rhode Island maintains a free, online public access tool through its website, where users can easily look up criminal case information, including case no. K2-2016-0410A.

28. Any human being trained in reviewing public record information that reviewed case no. K2-2016-0410A would immediately recognize Plaintiff had not been charged with a crime, but rather had paid a bail bond for the defendant.

29. Moreover, the Case Summary page for case no. K2-2016-0410A has a field labeled "Defendant" which clearly reflects "RIZZO, FRANCESCO."

30. Put plainly, there is no information on the Case Summary page for case no. K2-2016-0410A which implies or could be interpreted in any way to communicate Plaintiff was being charged with the crimes in question.

31. Unfortunately, upon information and belief, First Advantage prepares its background checks by relying upon information generated via automated, database-driven methods rather than conducting direct, manual searches of public record information and reviewing that information manually.

32. Upon information and belief, information generated from such methods is often fraught with inaccuracies and/or out-of-date information.

33. Upon information and belief, a common issue associated with information generated from such methods is that public record information is routinely inaccurately attributed to the wrong person.

34. Such inaccurate reporting is precisely what occurred with respect to Plaintiff at the hands of First Advantage.

35. It is not difficult to guess how this may have happened. Upon information and belief, it is unlikely the matching algorithms employed by First Advantage account for a field labeled "Bond Payor." Rather than disregard the data in this field – namely, Plaintiff's name – it is likely First Advantage's algorithms instead inaccurately recognized this field as a "defendant" field, and therefore inaccurately attributed these criminal records to Plaintiff.

36. Upon information and belief, had a human being reviewed the Case Summary for case no. K2-2016-0410A, Plaintiff's involvement as a non-defendant would have been obvious, and First Advantage's inaccurate reporting would have never happened.

37. Upon information and belief, the only thing preventing First Advantage from taking this extra step prior to accusing Plaintiff of being a convicted felon – to her new employer, no less – is the fact it would have taken First Advantage longer to do so, would have involved a human component, and would therefore have been less profitable for First Advantage.

38. Therefore, upon information and belief, First Advantage fails to maintain and employ reasonable procedures to assure maximal accuracy of the consumer reports and consumer information it sells to third parties as required by the FCRA.

39. First Advantage is aware its consumer reporting services are used to make significant consumer decisions concerning employment.

40. First Advantage is further aware its procedures frequently result in the reporting of inaccurate information, evidenced by First Advantage's involvement in multiple class action lawsuits.

41. Regardless, First Advantage chooses to continue to rely on its unreasonable procedures precisely because of the substantially high level of profitability associated with automated reporting as compared with manual review and reporting of consumer information.

42. Upon learning of First Advantage's inaccurate reporting, Plaintiff immediately contacted Frito-Lay, in hopes they would hold her employment position for her while she worked with First Advantage to correct its inaccurate reporting.

43. Plaintiff was unable to get ahold of a human being at Frito-Lay and left a voicemail message communicating what was going on.

44. Specifically, Plaintiff communicated in her voicemail message to Frito-Lay that First Advantage had reported inaccurate criminal information about her, and that the criminal records First Advantage had reported were in fact records belonging to her brother.

45. Plaintiff never intended to share with her new employer that her brother had been accused and convicted of a felony, as this information is wholly unrelated to Plaintiff or her employment. Sadly, she was forced to do so as a result of First Advantage's inaccurate consumer reporting in order to explain how these records wound up on her background check.

46. Plaintiff was humiliated that she had been forced to recount her brother's crimes to her new employer, and she held significant concerns Frito-Lay might hold the crimes of her brother against her in some way and rescind her offer – after all, First Advantage itself was holding the crimes of Plaintiff's brother against her.

47. After contacting Frito-Lay, Plaintiff contacted First Advantage on or about April 4, 2022, to notify it that it was reporting inaccurate information about her in the consumer report First Advantage prepared and sold to Frito-Lay.

48. Specifically, Plaintiff notified First Advantage it was reporting criminal records that did not belong to Plaintiff.

49. Given the significant opportunity the employment position with Frito-Lay represented for Plaintiff, she was distraught while she waited for First Advantage to respond and correct its inaccurate reporting.

50. Plaintiff suffered severe emotional distress and anxiousness while she waited to hear from First Advantage. She experienced issues falling and/or staying asleep and spent a great deal of time and energy worrying she had lost her opportunity with Frito-Lay through no fault of her own.

51. Approximately two weeks after Plaintiff notified First Advantage that it was reporting inaccurate information concerning Plaintiff, First Advantage contacted Plaintiff via email

and notified her that it had corrected its reporting and removed the obviously erroneous information from her consumer report.

52. Thereafter, she was able to begin orientation at Frito-Lay, approximately two weeks later than she would have been able to but for First Advantage's inaccurate reporting.

53. After starting orientation, Plaintiff had a conversation with a Frito-Lay employee who had listened to Plaintiff's voicemail message, where Plaintiff communicated that First Advantage was reporting inaccurate information about her.

54. The employee with whom Plaintiff spoke told her it was a very surprising phone call to hear and communicated to Plaintiff that she sounded "messed up" in her voicemail message.

55. Plaintiff, embarrassed by the circumstances, apologized for her voicemail message and communicated to her new colleague that she had been extremely upset and angry when she'd left the voicemail message. Her colleague remarked that she too, would have been upset and angry, given the mistake First Advantage made.

56. Fortunately, First Advantage's inaccurate reporting did not result in Plaintiff losing the significant employment opportunity with Frito-Lay. However, Plaintiff only was able to salvage her employment position with Frito-Lay by spending her own time and effort to dispute First Advantage's reporting to ensure it ultimately reported correct information about her.

57. Upon information and belief, it is unreasonable to maintain procedures that are designed to require consumers to "police" their own background reports to ensure accurate information is reported, and to ensure consumer reporting agencies like First Advantage fulfill their legal obligations.

58. Such procedures place the burden on consumers to correct inaccurate information contained in their background reports after they have already been harmed, rather than First Advantage simply reporting accurate information in the first place.

59. Such procedures also serve to save First Advantage significant operational costs which would otherwise be associated with human review of public record information. By forcing consumers to dispute inaccurate information – rather than confirming such information is accurate prior to reporting it – First Advantage avoids higher personnel costs and related expenses.

60. In short, upon information and belief, these procedures are specifically structured to maximize profits for First Advantage and in fact allow for the inaccurate reporting of consumer information as an acceptable, perhaps even expected, outcome.

61. Procedures like these are directly contradictory to the purposes of the FCRA, which include, *inter alia*, ensuring accuracy and fairness in consumer reporting.

62. As a direct result of First Advantage's conduct, action, and inaction, Plaintiff has suffered actual damages, including but not limited to: lost wages, damage to reputation, emotional distress, anxiety, frustration, anger, embarrassment, humiliation, sleepless nights, and wasted time.

## COUNT I
### First Advantage's Violations of 15 U.S.C. § 1681e(b)

63. Plaintiff incorporates the above paragraphs of this Complaint as though they are fully detailed herein.

64. The FCRA requires consumer reporting agencies, like First Advantage, to maintain reasonable procedures to ensure they compile and disburse consumer information with maximal accuracy. 15 U.S.C. § 1681e(b).

65. First Advantage violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report.

66. Upon information and belief, First Advantage has been sued or has received disputes from other consumers in the past who have alleged its procedures were unreasonable and violative of the FCRA.

67. Therefore, First Advantage had actual notice of its deficient procedures.

68. In this case, however, First Advantage received actual notice its procedures were unreasonable as applied to Plaintiff.

69. It is wholly unreasonable to maintain procedures that allow reporting another person's criminal records in a consumer's consumer report.

70. Specifically, it was wholly unreasonable for First Advantage to report criminal records involving Plaintiff's brother in a consumer report concerning Plaintiff and attribute those records to Plaintiff, particularly given the fact that even a cursory review of the records in question makes obvious that the records do not belong to Plaintiff.

71. As a result of First Advantage's failure to maintain reasonable procedures to ensure maximal accuracy of Plaintiff's consumer information, Plaintiff has suffered statutory and actual damages as detailed herein.

72. First Advantage's violations of 15 U.S.C. § 1681e(b) were willful. Therefore, First Advantage is liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

73. Alternatively, First Advantage's violations of 15 U.S.C. § 1681e(b) were negligent. Therefore, First Advantage is liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

74. In any event, First Advantage is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## **TRIAL BY JURY**

75. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dolores Rizzo, respectfully requests judgment be entered against Defendant First Advantage, for the following:

A.  Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

B.  Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

C.  Punitive damages pursuant to 15 U.S.C. § 1681n;

D.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o and/or 1681n; and

E.  All pre-judgment and post-judgment interest as may be allowed under the law; and

F.  Any other and further relief as the Court may deem just and proper.

Respectfully submitted this 11th day of May 2022,

**Stein Saks, PLLC**
_/s/_Yaakov Saks
Yaakov Saks, Esq.

One University Plaza
Suite 620
Hackensack, NJ 07601
Telephone: 201-282-6500 ext 101
Fax: 201-282-6501
Federal Bar No. ct30021
ysaks@steinsakslegal.com
*Attorneys for Plaintiff*